GLANCY BINKOW & GOLDBERG LLP
Lionel Z. Glancy (#134180)
Robert V. Prongay (#270796)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: info@glancylaw.com

KIRBY McINERNEY LLP
Ira M. Press
Sarah G. Lopez
825 Third Avenue, 16th Floor
New York, NY 10022
Telephone: (212) 371-6600
Facsimile: (212) 751-2540

*Counsel for Plaintiff Cement & Concrete Workers District Council Pension Fund*

FILED BY FAX PURSUANT TO LOCAL RULES

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CEMENT & CONCRETE WORKERS DISTRICT COUNCIL PENSION FUND<br><br>Plaintiff<br><br>v.<br><br>HEWLETT PACKARD COMPANY, and MARK A. HURD,<br><br>Defendants | CIVIL ACTION NO.<br>CV12-04115 PJH<br><br><u>CLASS ACTION</u><br><br>**COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS**<br><br><u>DEMAND FOR JURY TRIAL</u> |

COMPLAINT

## I. NATURE OF THE ACTION

Plaintiff, on behalf of itself and all others similarly situated, upon personal knowledge as to plaintiff and its acts, and as to all other matters upon information and belief based upon, inter alia, the investigations of Plaintiff's counsel, states the following:

1. This is a securities fraud class action brought on behalf of all persons who purchased the common stock of Hewlett-Packard Company ("HP" or the "Company") between November 13, 2007 and August 6, 2010, inclusive (the "Class Period") and held those shares as of the close of trading on August 6, 2010. The action asserts claims against HP and HP's former CEO, Mark A. Hurd ("Hurd") for violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") (15 U.S.C. §§78j(b) and 78t(a)), and Rule 10b-5 (17 C.F.R. §240.10b-5) promulgated thereunder by the SEC.

2. HP is a technology solutions provider to consumers, businesses and institutions globally, whose offerings span IT infrastructure, global services, business and home computing, and imaging and printing.

3. Throughout the Class Period, HP made statements that were false and misleading due to their failure to disclose knowing violations by CEO Mark Hurd ("Hurd") of HP's Standards of Business Conduct.

4. On August 6, 2010, the company disclosed Hurd's violations and the fact that Hurd resigned as a result. These disclosures caused HP's stock price to decline.

## II. JURISDICTION AND VENUE

The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Securities Exchange Act of 1934 (15 U.S.C. §§78j(b) and 78t(a)), and Rule 10b-5 (17 C.F.R. §240.10b-5) promulgated thereunder by the SEC.

5. Venue is proper in this District pursuant to §27 of the Exchange Act. Many of the acts and transactions giving rise to the violations of law complained of herein, including the preparation and dissemination to the investing public of false and misleading information, occurred in this District. HP has its principal place of business at principal executive offices located at 3000 Hanover

Street, Palo Alto, California, where the day-to-day operations of the Company are directed and managed.

6. In connection with the acts, conduct and other wrongs complained of, the defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, the United States mails, and the facilities of the national securities markets.

### III. THE PARTIES

7. Plaintiff Cement & Concrete Workers District Council Pension Fund purchased HP securities during the Class Period, as detailed in the attached certification, and was damaged thereby.

8. Defendant HP is a Delaware corporation with its principal executive offices located at 3000 Hanover Street, Palo Alto, California. According to its public filings and press releases, HP is a technology solutions provider to consumers, businesses and institutions globally, whose offerings span IT infrastructure, global services, business and home computing, and imaging and printing. HP's stock is traded in an efficient market on NYSE under the ticker symbol "HPQ."

9. Defendant Hurd, a citizen of California, served as the Company's Chairman of the Board, President, CEO, and as a Company director until his resignation on August 6, 2010. Hurd began serving as a director and executive at the Company in April 2005, and became Chairman of the Board in September 2006.

10. By reason of his position as the Company's Chairman of the Board, President, CEO, and as a Company director, Hurd had access to material inside information about HP and was able to control directly or indirectly the acts of HP and the contents of the representations disseminated during the Class Period by or in the name of HP. HP and Hurd are collectively referred to herein as "Defendants."

### IV. SUBSTANTIVE ALLEGATIONS

11. Prior to and throughout the Class Period, Defendants issued statements regarding ethical standards with which HP employees and officers needed to comply. HP issued a Standards of Business Conduct Brochure (SBC) in 2006, May 2008 and June 2010. All of these versions included statements concerning, *inter alia*, HP's purported standards governing interpersonal conduct, use of company resources, and maintenance of accurate business records.

COMPLAINT
2

12. Upon information and belief, as of the commencement of the Class Period the 2006 SBC was publicly available on HP's website. In May 2008 HP published an updated version of the 2006 SBC. The May 2008 SBC was made publicly available on the HP website upon information and belief in May 2008. In June 2010, HP once again published an updated version of the SBC and upon information and belief the June 2010 SBC was made publicly available on the HP website in June 2010.

13. On or around November 13, 2007, HP Vice President and Chief Ethics and Compliance Officer Jon Hoak spoke about HP's commitment to a culture of integrity at a meeting with members of the Business and Organizational Ethics Partnership at the Markkula Center for Applied Ethics at Santa Clara University. Hoke described HP's new vision for ethics and compliance as a competitive advantage and detailed the action items his office laid out to rebuild the company's reputation which included revising the SBC code and enhancing the HR process related to the SBC including holding employees at all levels accountable. Additionally, the Class Period 10Ks (HP's Form 10Ks for fiscal years ended October 31, 2007, October 31, 2008; and October 31, 2009) and HP's Class Period 10Qs (HP's Form 10Qs for the quarters ended January 31, 2008, April 30, 2008, July 31, 2008, January 31, 2009, April 30, 2009, July 31, 2009, January 31, 2010 and April 30, 2010) reference the agreements to settle certain shareholder derivative actions. Among the terms agreed to in connection with these settlements were enhancements of HP's ethics practices. One of the Settlement Agreements was filed in California State Court as of December 18, 2007, the Notice was disseminated to derivative class members on or around January 11, 2008 and the Summary Notice was published in *The New York Times* and *The Wall Street Journal* on or around January 21, 2008.

14. Unbeknownst to plaintiff and the Class, Defendant Hurd had been materially violating HP's SBC in a manner that jeopardized his continued employment at the Company. These violations were material to investors because they subjected Hurd to the risk of dismissal from HP. Throughout the Class Period, HP's SEC filings warned of the material consequences that could arise from the departure of key personnel, while remaining silent about Hurd's conduct. These warnings were issued in HPs Class Period 10Ks (HP's Form 10Ks for fiscal years ended October 31, 2007,

October 31, 2008, and October 31, 2009) and Class Period 10Qs (HP's Form 10Qs for the quarters ended January 31, 2008, April 30, 2008, July 31, 2008, January 31, 2009, April 30, 2009, July 31, 2009, January 31, 2010 and April 30, 2010).

15. On August 6, 2010, HP announced Hurd's departure from the Company. HP followed the press release with a conference call that evening. HP revealed for the first time that, despite HP's public statements about its standards of business conduct, and despite HPs warnings of the risks to the Company of key personnel departures, Hurd was engaged in knowing violation of those standards in a manner that subjected him to dismissal. Specifically, sexual harassment claims against Hurd prompted an investigation by independent and HP counsel that uncovered conduct prompting Hurd's resignation.

16. HP's share price fell sharply in response to the disclosure of Hurd's resignation and the resulting violations of HP's standards of conduct.

## V. DEFENDANTS' MISREPRESENTATIONS PROXIMATELY CAUSED PLAINTIFF'S DAMAGES THROUGH A FRAUD ON THE MARKET

17. At all relevant times, the market for HP's stock was an efficient market that promptly digested current information with respect to the Company from all publicly-available sources and reflected such information in HP's stock price.

18. The common stock of HP met the requirements for listing, and was listed and actively traded, on the NYSE, a highly developed and efficient market. During the Class Period, HP stock was heavily traded, with volume averaging millions of shares daily. HP filed periodic public reports with the SEC, and was followed by dozens of analysts from brokerages. The reports of these analysts were redistributed to their customers and the public at large, and HP regularly issued press releases, which were carried by national newswires. Thus, the analyst reports and HP's press releases entered the public marketplace. As a result, the market for HP's stock promptly digested current information with respect to HP from all publicly-available sources, and reflected such information in HP's stock price. Plaintiff and other members of the Class relied on the integrity of the market price of HP's publicly traded stock.

19. As would be expected where a security is traded in an efficient market, material news concerning HP's operations, financial results, and prospects had an immediate effect on the market price of HP stock. Disclosure of the Board's investigation and Hurd's resignation on August 6, 2010 and the consequent drop in the value of HP's common stock, vividly so demonstrate.

20. At the times plaintiff purchased or otherwise acquired the Company's stock, plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts.

## VI. SCIENTER ALLEGATIONS

21. As alleged herein, Defendants acted with scienter in that Defendants knew or recklessly disregarded that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading, knew that such statements and documents would be issued or disseminated to the investing public, and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. Defendants either knew or recklessly disregarded the fact that the improper and unethical acts and practices and misleading statements and omissions described herein would artificially inflate or maintain the price of HP's stock. Each of the Defendants, by acting as herein described, did so knowingly or in such a reckless manner as to constitute a fraud and deceit upon plaintiff and members of the Class that plaintiff seeks to represent.

22. Because of Hurd's position of control and authority as an officer and director of the Company, he was able to, and did control the contents of the various quarterly and annual financial reports, SEC filings, press releases, and presentations to securities analysts pertaining to HP. Hurd was provided with copies of HP's press releases and SEC filings alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of Hurd's board membership and executive and managerial positions with HP, he knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. Hurd is therefore liable for the false statements pleaded herein.

## VII. CLASS ACTION ALLEGATIONS

23. Plaintiff brings this lawsuit pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of themselves and on behalf of a class of persons who purchased HP stock from November 13, 2007 through August 6, 2010, inclusive and who still held the shares at the close of trading on August 6, 2010 (the "Class"). Excluded from the Class are Defendants herein, members of the immediate families of each of the Defendants, any person, firm, trust, corporation, officer, director or other individual or entity in which any Defendant has a controlling interest or which is related to or affiliated with any of the Defendants, and the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of any such excluded party.

24. This action is properly maintainable as a class action for the following reasons:

(A) The Class is so numerous that joinder of all Class members is impracticable. HP has more than 1.9 billion shares outstanding, and an average of more than 20 million HP shares traded per day during the Class Period. Members of the Class are scattered throughout the United States.

(B) There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to members of the Class predominate over any questions affecting only individual Class members. These common questions include, inter alia:

(i) Whether the Defendants' acts as alleged herein violated the federal securities laws;

(ii) Whether Defendants participated in and pursued the common course of conduct complained of herein;

(iii) Whether documents, SEC filings, press releases and other statements disseminated to the investing public and HP's common stockholders during the Class Period misrepresented material facts about HP and its executives;

(iv) Whether Defendants' statements omitted material facts necessary to make the statements made, in light of circumstances under which they were made, not misleading;

(v) Whether Defendants knew or deliberately disregarded that their statements were false or misleading;

(vi)     Whether the market prices of HP stock during the Class Period were artificially inflated due to material misrepresentations and the failure to correct the material misrepresentations complained of herein; and

(vii)    To what extent the members of the Class have sustained damages and the proper measure of damages.

(C)     Plaintiff's claims are typical of the claims of other members of the Class. Plaintiff and the Class sustained damages from Defendants' wrongful conduct, which caused all HP shares to trade at artificially inflated prices throughout the Class Period.

(D)     Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in litigation of this nature. Plaintiff has no interests that are adverse or antagonistic to the interests of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

(E)     Plaintiff anticipates that there will not be any difficulty in the management of this litigation as a class action.

25.     For the reasons stated herein, a class action is superior to other available methods for the fair and efficient adjudication of this action and the claims asserted herein. Because of the size of the individual Class members' claims, few, if any Class members could afford to seek legal redress individually for the wrongs complained of herein.

### COUNT I

### FOR VIOLATION OF SECTION 10(B) OF THE EXCHANGE ACT AND RULE 10B-5 PROMULGATED THEREUNDER AGAINST ALL DEFENDANTS

26.     Plaintiff repeats and realleges the allegations set forth above as though fully set forth herein.

27.     This Count is brought by plaintiff pursuant to §10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder by the SEC against all Defendants.

28.     The Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary in order to make the statements made not misleading; and (c) engaged in acts, practices, and a course of business

COMPLAINT
7

which operated as a fraud and deceit upon the purchasers of HP stock in an effort to maintain artificially high market prices for HP stock in violation of §10(b) of the Exchange Act and Rule 10b-5. Defendants are sued as primary participants in the wrongful and illegal conduct charged herein and/or as controlling persons as alleged below.

29. In addition to the duties of full disclosure imposed on the Defendants by their status as controlling persons of HP, as a result of their affirmative statements and reports, or participation in the making of affirmative statements and reports to the investing public, and as a result of their sales of HP stock during the Class Period, Defendants had a duty to promptly disseminate truthful information that would be material to investors in compliance with the integrated disclosure provisions of the SEC as embodied in SEC regulations S-X (17 C.F.R. §210.01, et seq.) and S-K (17 C.F.R. §229.10, et seq.) and other SEC regulations, including accurate and truthful information with respect to HP's stock, operations, financial condition and earnings so that the market price of HP stock would be based on truthful, complete and accurate information.

30. Defendants, by using the means and instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business and operations of HP as specified herein. The Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of HP's value, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about HP, in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of HP stock during the Class Period.

31. The Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein or recklessly disregarded the same. Defendants' material misrepresentations or omissions were done knowingly or recklessly and for the purpose and effect of

COMPLAINT
8

1 concealing Hurd's unethical and improper conduct, the fact that this conduct put Hurd's continued ability to continue to serve as HP's CEO in jeopardy.

32. As a result of the dissemination of the materially false and misleading information and failure to disclose material facts by Defendants, as set forth above, the market price of HP stock was artificially inflated during the Class Period. In ignorance of the fact that the market price for HP stock was artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the shares trade, and the truth of any representations made to appropriate agencies and to the investing public, at the times at which any statements were made, and/or on the absence of material adverse information that was known by Defendants but not disclosed in public statements by Defendants during the Class Period, plaintiff and the other members of the Class acquired HP stock during the Class Period at artificially high prices and were damaged thereby as the market price of HP stock declined in response to disclosures of HP's true state of affairs.

33. At the time of said misrepresentations and omissions, plaintiff and other members of the Class were ignorant of their falsity and believed them to be true. Had plaintiff and the other members of the Class and the marketplace known of Defendants' practices and of the liabilities to which such practices exposed HP and HP investors, which were not disclosed by Defendants, plaintiff and other members of the Class would not have purchased HP stock during the Class Period, or, if they had purchased such stock during the Class Period, they would not have done so at the artificially inflated prices which they paid.

34. By virtue of the foregoing, Defendants have violated §10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

35. Plaintiff and the other members of the Class suffered damages in connection with their purchases of HP stock during the Class Period, a direct and proximate result of the wrongful conduct of the Defendants.

## COUNT II

## FOR VIOLATION OF SECTION 20(A) OF THE EXCHANGE ACT AGAINST MARK HURD

36. Plaintiff repeats and realleges the allegations set forth above as if set forth fully herein.

37. Hurd acted as a controlling person of HP within the meaning of §20(a) of the Exchange Act as alleged herein. By virtue of his high-level positions, participation in and/or awareness of HP operations and/or intimate knowledge of its business practices, Hurd had the power to influence and control and did influence and control, directly or indirectly, the decision-making of HP, including the content and dissemination of the various statements which plaintiff contends are false and misleading. Hurd was provided with or had unlimited access to copies of HP's internal reports, press releases, public filings and other statements alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to either prevent the issuance of the statements or cause the statements to be corrected. In particular, Hurd had direct involvement in or intimate knowledge of the day-to-day operations of HP and therefore is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

38. Hurd acted as a controlling person of HP within the meaning of §20(a) of the Exchange Act as alleged herein. By virtue of the Hurd's high-level position, participation in and/or awareness of HP operations and/or intimate knowledge of its business practices, he had the power to influence and control and did influence and control, directly or indirectly, the decision-making of HP, including the content and dissemination of the various statements which plaintiff contends are false and misleading. Hurd was provided with or had unlimited access to copies of statements alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to either prevent the issuance of the statements or cause the statements to be corrected. In particular, Hurd had direct involvement in or intimate knowledge of the day-to-day operations of HP and therefore are presumed to have had the power to control or influence the

particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

39. As set forth above, Defendants violated §10(b) of the Exchange Act and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of his position as a controlling person, Hurd is liable pursuant to §20(a) of the Exchange Act.

40. Plaintiff and other members of the Class suffered damages in connection with their purchases of HP stock during the Class Period, as a direct and proximate result of the wrongful conduct of Hurd.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff, on behalf of themselves and the Class, pray for judgment as follows:

(A) Declaring this action to be a class action properly maintained pursuant to Rule 23 of the Federal Rules of Civil Procedure;

(B) Awarding plaintiff and other members of the Class damages together with interest thereon;

(C) Awarding plaintiff and other members of the Class costs and expenses of this litigation, including reasonable attorneys' fees, accountants' fees and experts' fees and other costs and disbursements; and

(D) Awarding plaintiff and other members of the Class such equitable/injunctive and/or other and further relief as may be just and proper under the circumstances.

**JURY DEMAND**

Plaintiff demands a trial by jury.

DATED: August 3, 2012

Respectfully submitted,

By: _____
Robert V. Prongay
Lionel Z. Glancy
GLANCY BINKOW & GOLDBERG LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: info@glancylaw.com

*Plaintiff's Counsel and Proposed Liaison Counsel for Plaintiffs*

KIRBY McINERNEY LLP
Ira M. Press
Sarah G. Lopez
825 Third Avenue, 16th Floor
New York, NY 10022
Telephone: (212) 371-6600
Facsimile: (212) 751-2540

*Plaintiff's Counsel and Counsel for Proposed Lead Plaintiff*

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

Silvana Baldo declares as follows:

1. I am the <u>Administrator</u> for <u>Cement & Concrete Workers District Council Pension Fund</u> ("plaintiff"). As such, I am authorized to make this certification on plaintiff's behalf.

2. I have reviewed the attached complaint, and have authorized its filing on plaintiff's behalf. Plaintiff retains Kirby McInerney LLP, and such co-counsel as it deems appropriate to associate with, to pursue such action on a contingent fee basis.

3. Plaintiff did not purchase Hewlett Packard Company securities at the direction of plaintiff's counsel or in order to participate in this private action.

4. Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

5. Plaintiff's transactions in Hewlett Packard Company securities during the class period as set forth in the complaint are set forth below on the attached Schedule A.

6. During the three years prior to the date of this certification, plaintiff has not served or sought to serve as a representative party, for a class in any action filed under the federal securities laws.

7. Plaintiff will not accept payment for serving as a representative party on behalf of the class beyond plaintiff's pro rata share of any class recovery, except as ordered/approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 27 day of July, 2012.

_____
Signature

2

## SCHEDULE A

Class Period Transactions of Plaintiff in the Hewlett Packard Company:

| Date | Purchased/Sold | Number of Shares | Price Per Share |
| --- | --- | --- | --- |
| 1/25/2008 | Purchased | 2,610 | $45.18 |
| 1/25/2008 | Purchased | 1,410 | $45.18 |
| 5/22/2008 | Sold | 3,040 | $44.80 |
| 7/9/2008 | Sold | 2,400 | $42.61 |
| 10/7/2008 | Sold | 110 | $41.50 |
| 10/8/2008 | Purchased | 1,675 | $41.36 |
| 11/19/2008 | Purchased | 1,170 | $33.61 |
| 2/17/2009 | Sold | 2,130 | $34.91 |
| 6/17/2009 | Purchased | 2,290 | $37.27 |
| 2/19/2010 | Sold | 905 | $50.57 |
| 3/1/2010 | Purchased | 500 | $51.52 |
| 5/7/2010 | Sold | 2,910 | $46.44 |
| 5/7/2010 | Sold | 730 | $46.44 |
| 5/10/2010 | Sold | 2,730 | $49.35 |
| 5/10/2010 | Sold | 910 | $49.35 |
| 6/2/2010 | Purchased | 100 | $47.07 |
| 7/27/2010 | Purchased | 7500 | $47.72 |